828 F.2d 18
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
John R. NANCE, Defendant-Appellee.
 No. 86-5178
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1987.
Decided August 18, 1987.
 
 Mark Lenard Gross, Department of Justice (William Bradford Reynolds, Assistant Attorney General, David K. Flynn, Department of Justice, Robert H. Edmunds, Jr., United States Attorney, on brief), for appellant.
 David W. Long (Laura A. Broughton, Poyner & Spruill, on brief), for appellee.
 Before HALL and WILKINS, Circuit Judges, and VAN GRAAFEILAND, Senior Circuit Judge for the Second Circuit, sitting by Designation.
 PER CURIAM:
 
 
 1
 The Government appeals from an order of the United States District Court for the Middle District of North Carolina (Bullock, J.), which set aside a jury verdict convicting John Nance on one of two counts of perjury before a grand jury, 18 U.S.C. Sec. 1623, and directed a new trial. We affirm.
 
 
 2
 On July 2, 1981, Billy Ray Smith and Kenneth Thompson, inmates at the Piedmont Correctional Center in Salisbury, North Carolina, were severely beaten by prison guards. Five years later, a federal grand jury indicted four guards and the prison superintendent, Robert Hinton, charging them with conspiracy to violate the prisoners' civil rights and to obstruct justice. Appellant Nance, the assistant superintendent at the institution, was charged with neither. Instead, he was charged with the two counts of perjury.
 
 
 3
 The first count, the one on which Nance was convicted, charged him with falsely denying any recollection of having heard Hinton, responding to complaints about Smith and Thompson at a June 1981 meeting, tell Guard Captains present at the meeting to 'whip their ass and whip it good.' The second count charged that Nance had lied when he denied going to the sixth floor of the prison, where Smith and Thompson were housed, prior to their beatings on July 2. This count was dismissed at the close of the Government's case, and the merits of the dismissal are not before us. However, we note the following comments of the district court concerning this count, because they are indicative of the court's unease with the manner in which the Government was proceeding against appellant:
 
 
 4
 [Q]uite frankly, I am amazed and somewhat appalled that you indicted this defendant on this additional count of lying about going to the second (sic) floor. You cut off the indictment right after he says, 'No, sir, I didn't go.' And then you ask him another question or two, and he says, 'I don't recall going. If I did go, it would be in the log. I always signed in, but it was in the log.'
 
 
 5
 The district court's similar unease with the Government's proof on the first count was demonstrated throughout the trial and culminated in the order setting aside the jury's verdict. The reasons are readily apparent in the record.
 
 
 6
 On June 20, 1986, Nance moved before District Judge Richard Erwin to have his case severed from that of his codefendants. Nance contended that, despite the fact he was not charged with planning, carrying out, or covering up the intensely brutal beatings of Smith and Thompson, the evidence against the other defendants would be so inflammatory as to prevent the jury from making a fair determination of his guilt or innocence. Over the Government's objection, the court granted Nance's motion, and his case was assigned to Judge Bullock for trial.
 
 
 7
 After the individual guards pled guilty to reduced charges, the Government proceeded to try Robert Hinton, and he was convicted. In our unpublished opinion affirming that conviction, we recited in some detail how Smith and Thompson were taken from their cells, with chains around their legs and waists and handcuffs on their wrists, and brutally beaten by guards. We also described the severe injuries which they sustained from the beatings. Despite its inflammatory nature, this testimony was admissible on that trial to show the nature and results of the conspiracy between Hinton and his guards to violate the prisoners' civil rights. Although the probative value of this testimony in Nance's trial was speculative at best, although a separate trial had been granted Nance because of prejudicial spillover, and although Nance offered to stipulate that Smith and Thompson had been beaten, the testimony introduced by the Government on Nance's trial was almost a carbon copy of that which led to Hinton's conviction. Government witnesses described in lurid detail how the shackled inmates were beaten with slapjacks (ten-twelve inch pieces of leather with a handle on one end and a chunk of lead on the other), and a thirty-six-inch riot baton. Samples of these devices were offered in evidence with demonstrations by Government witnesses as to how they were used against Smith and Thompson. The resultant injuries were described in the same detail as in the Hinton trial.
 
 
 8
 As this proof was coming in, the trial judge persistently questioned its propriety and fairness and his own wisdom in admitting it, e.g.:
 
 
 9
 Again, let me tell you, fellows, we're retrying the beating case.
 
 
 10
 ***
 
 
 11
 Fellows, this is going to do nothing but inflame the jury against this fellow. I mean, there's a point at which we pass relevance, or even relevance. It's just unfairly prejudicial. He's not charged with beating anybody. He's charged with prejudice (sic). This slapjack--what purpose is it to bring up this eighteen-inch stick, or whatever it is, that he took to the medical department?
 
 
 12
 ***
 
 
 13
 Well, a lot of this, I think, is irrelevant as to this defendant. But you may continue to go on, but let's not lose sight of what the defendant is charged with.
 
 
 14
 The discussion between the court and the prosecutor, when the prosecutor called the prison nurse to the stand, is particularly illuminating. In response to the court's comments that the prosecutor had already made out a case that the inmates were severely beaten, the prosecutor responded:
 
 
 15
 I can see that this is prejudicial to him, but I think its probative value overcomes any prejudicial effect.
 
 The court's response was:
 
 16
 But let me see if I follow your--The government's position is that you--there's ample evidence before the jury that it was a severe beating that was unprovoked, that it was not routine, and that it shows some extremely culpable conduct on the part of just about everybody who has testified for the government, and they have been charged. But I still have trouble relating this to a meeting beforehand in which Nance is conducting and Hinton makes a comment about how to handle it, and then Garris goes out and apparently takes it as a command, which perhaps it wasn't intended to be and perhaps was. And he goes out and beats these inmates.
 
 
 17
 Now why do we need any more medical testimony here? I mean, I don't want to keep you from anticipating the defense, if that's where you're going, but--
 
 The prosecutor then replied:
 
 18
 In part, I suppose that's what I'm doing. But I think the knowledge of the defendant as to the circumstances of this beating are relevant to show that it's improbable, at best, that he would not have remembered what occurred at a meeting like that.
 
 
 19
 The weakness in the prosecutor's argument is glaringly apparent. The Government never proved that Nance had knowledge as to the circumstances of the beatings. Much of the proof that tied Hinton to the beatings was inadmissible hearsay as to Nance, who was not charged with being a coconspirator of the guards and Hinton. In fact, the Government's proof was that the guards involved gave Nance a false version of the circumstances surrounding the beatings.
 
 
 20
 Rule 33 of the Federal Rules of Criminal Procedure provides that the trial court may grant a defendant's motion for a new trial 'if required in the interest of justice.' Although the district court expressed some qualms about the adequacy of the Government's proof, its principal concern appeared to be with the erroneous admission of prejudicial evidence:
 
 
 21
 However, the Court is concerned whether Defendant may have been unfairly prejudiced by the jury's consideration of evidence that, while admissible in a conspiracy case, was of limited relevance on the perjury counts against the defendant.
 
 
 22
 ***
 
 
 23
 Furthermore, the substantial evidence admitted at trial concerning the severity of the prolonged and unprovoked beatings of inmates Smith and Thompson, and its likely effect upon the jury, and the length of the jury deliberations, leads the court to the opinion that the jury's verdict may have been influenced by improper considerations.
 
 
 24
 ***
 
 
 25
 However, for the reasons I have mentioned bearing upon the weight of the evidence, coupled with the inflammatory evidence about persons other than the Defendant in this case, leads the Court to the conclusion that a new trial must be granted in the interest of justice in this case.
 
 
 26
 Therefore the Court will grant Defendant's motion for a new trial under Rule 33. If the government elects to retry Mr. Nance, it should do so on the charges contained in the indictment and not seek to convict him of conspiracy with which he has not been charged.
 
 
 27
 The proper standard for review of the district court's order is abuse of discretion. United States v. Arroyo, 805 F.2d 589, 597 (5th Cir. 1986); United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985); see United States v. Shipp, 409 F.2d 33, 36-37 (4th Cir.), cert. denied, 396 U.S. 864 (1969). We are not prepared to say that the improperly admitted evidence in the case did not contribute to the jury's verdict. Certainly, we find no abuse of discretion in the district court's decision to the contrary. We agree with the district court's admonition that '[i]f the government elects to retry Mr. Nance, it should do so on the charges contained in the indictment and not seek to convict him of conspiracy with which he has not been charged.'
 
 The order of the district court is
 
 28
 AFFIRMED.